## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GENERAL MAJORITY PAC, a
Washington, D.C., not for profit
corporation,

        *Plaintiff*,

        v.

CAROL AICHELE, in her official
capacity as Pennsylvania Secretary of
State; KATHLEEN KANE, in her
official capacity as Pennsylvania
Attorney General; JONATHAN M.
MARKS, in his official capacity as
Commissioner of Pennsylvania's
Bureau of Commissions, Elections
and Legislation; IAN HARLOW, in
his official capacity as Deputy
Commissioner of Pennsylvania's
Bureau of Commissions, Elections
and Legislation; and TRISHA
MALEHORN, in her official capacity
as Chief of the Division of Campaign
Finance and Lobbying Disclosure of
Pennsylvania's Bureau of
Commissions, Elections and
Legislation,

        *Defendants*.

Civil Action No. _____

## PLAINTIFF GENERAL MAJORITY PAC'S BRIEF IN SUPPORT OF
## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

# TABLE OF CONTENTS

I.    PROCEDURAL HISTORY ................................................................2

II.   STATEMENT OF FACTS ...............................................................2

III.  STATEMENT OF QUESTION INVOLVED..................................6

IV.  ARGUMENT....................................................................................6

     A.    Legal Standard.......................................................................6

     B.    GMP has a Strong Lilehood of Success on the Merits........................7

     C.    GMP Will Suffer Irreparable Harm Without an Injunction ...............................................................19

     D.    Defendants Will Not Suffer Harm if Injunctive Relief is Granted ....................................................21

     E.    The Public Interest Favors Injunctive Relief......................22

V.    CONCLUSION.................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Tel & Tel. Co. v. Winback & Conserve Program, Inc.*,
  42 F.3d 1421 (3d Cir. 1994) ...............................................................................22

*Buckley v. Valeo*,
  424 U.S. 1 (1976).................................................................................................8

*Citizens United v. FEC*,
  558 U.S. 310 (2010) ..................................................................................... passim

*Center for Individual Freedom v. Corbett*,
  No. 07-2792, 2008 WL 2190957 (E.D. Pa. May 5, 2008) ..............................2, 3

*Elrod v. Burns*,
  427 U.S. 347 (1976) ..........................................................................................21

*FEC v. National Conservative PAC*,
  470 U.S. 480 (1985) ............................................................................................9

*Homans v. City of Albuquerque*,
  264 F.3d 1240 (10th Cir. 2001) ........................................................................22

*Jones v. Caruso*,
  569 F.3d 258 (6th Cir. 2009) .............................................................................22

*K.A. ex rel. Ayers v. Pocono Mountain School District*,
  710 F.3d 99 (3d Cir. 2013) ....................................................................7, 19, 22

*Lair v. Murry*,
  871 F. Supp. 2d 1058 (D. Mont. 2012) ................................................. 11, 13, 14

*Long Beach Area Chamber of Commerce v. City of Long Beach*,
  603 F.3d 684 (9th Cir. 2010) ......................................................................10, 11

*Mich. Chamber of Commerce v. Land*,
  725 F. Supp. 2d 665 (W.D. Mich. 2010)............................................. 12, 14, 15

*Miller v. Mitchell*,
   598 F.3d 139 (3d Cir. 2010) ............................................................................21

*North Carolina Right to Life, Inc. v. Leake*,
   525 F.3d 274 (4th Cir. 2008) ....................................................................10, 11

*N.J. Retail Merchants Association v. Sidamon-Eristoff*,
   669 F.3d 374 (3d Cir. 2012) ............................................................................21

*N.Y. Progress & Protection PAC v. Walsh*,
   733 F.3d 483 (2d Cir. 2013) .................................................................... passim

*Personal PAC v. McGuffage*,
   858 F. Supp. 2d 963 (N.D. Ill. 2012)................................................................11

*Randall v. Sorrell*,
   548 U.S. 230 (2006) .........................................................................................17

*Republican Party of New Mexico v. King*,
   -- F.3d --, No. 12-2015, 2013 WL 6645428 (10th Cir. Dec. 18, 2013) .............11

*Republican Party of New Mexivo v. King*,
   850 F. Supp. 2d 1206 (D.N.M. 2012)................................................................11

*SpeechNow.org v. FEC*,
   599 F.3d 686 (D.C. Cir. 2010)....................................................................11, 17

*Stay the Course West Virginia v. Tennant*,
   No. 1:12-CV-01658, 2012 WL 3263623 (S.D.W.Va. Aug. 9, 2012)................11

*Stilp v. Contino*,
   613 F.3d 405 (3d Cir. 2010) ...................................................................7, 17, 21

*Texans for Free Enterprise v. Texas Ethics Commission*,
   732 F.3d 535 (5th Cir. 2013) ................................................................... passim

*Thalheimer v. City of San Diego*,
   645 F.3d 1109 (9th Cir. 2011) ....................................................................11, 20

*WRTL State PAC v. Barland*,
   664 F.3d 139 (7th Cir. 2011) ..................................................................9,11, 18

*Yamada v. Weaver*,
　　872 F. Supp. 2d 1023 (D. Haw. 2012) ................................................................11

**STATUTES**

25 Pa. Stat. Ann. § 3241 .......................................................................................2

25 Pa. Stat. Ann. § 3244(a)&(b) .........................................................................17

25 Pa. Stat. Ann. § 3246 .....................................................................................17

25 Pa. Stat. Ann. § 3253(a) ........................................................................ passim

25 Pa. Stat. Ann. § 3259 (6) .................................................................................3

25 Pa. Stat. Ann. §3543 .................................................................................3, 19

25 Pa. Stat. Ann. § 3550 ................................................................................3, 19

Mont. Code Ann. § 13-1-101(22) .......................................................................15

N.J.S.A. 19:44A-11.5(c) .....................................................................................12

Texas Election Code § 251.001(12) ....................................................................15

**OTHER AUTHORITIES**

Middle District of Pennsylvania Local Rule 7.8(a) ...............................................3

United States Constitution ......................................................................... passim

Plaintiff, General Majority PAC ("GMP"), challenges the unconstitutional application of certain provisions of the Pennsylvania Election Code to prohibit independent expenditure-only political committees like GMP from soliciting or accepting contributions from corporations, unions, or unincorporated associations.

Pennsylvania's prohibition burdens and chills GMP's speech and association rights, in violation of the First and Fourteenth Amendments.  In *Citizens United v. FEC*, 558 U.S. 310 (2010), the Supreme Court of the United States held unequivocally that, under the First Amendment, the government may not restrict political speech based on the identity of the speaker, striking down a federal ban on the use of corporate funds for independent expenditures.  Every federal court of appeal that has considered the issue has applied *Citizens United* to keep the government from banning or limiting contributions by corporations, unions, or unincorporated associations to groups like GMP that only make independent expenditures and do not make contributions to candidates or party committees.  With the 2014 election cycle fast approaching, the injury to GMP is compounded by the day.  Accordingly, GMP respectfully requests that the Court immediately enjoin enforcement of Pennsylvania's prohibition on contributions by corporations, unions, and unincorporated associations to independent expenditure-only committees like GMP.

1

# I.    PROCEDURAL HISTORY

This is a civil action for declaratory judgment and injunctive relief arising under the First and Fourteenth Amendments.  GMP filed its complaint on February 24, 2014.

# II.    STATEMENT OF FACTS

Pennsylvania's Election Code prohibits any "political committee" from accepting or receiving contributions from corporations or unincorporated associations, including labor unions, for any political purpose.  25 Pa. Stat. Ann. § 3253(a) ("Section 3253(a)").[1]  It makes no exception for committees that only make "independent expenditures" – that is, expenditures "made for the purpose of influencing an election without cooperation or consultation with any candidate or political committee authorized by that candidate and which is not made in concert with or at the request or suggestion of any candidate or political committee or agent thereof."  *Id*. § 3241(e).  *See also Ctr. for Individual Freedom v. Corbett*, No. 07-2792, 2008 WL 2190957, at * 2 (E.D. Pa. May 5, 2008) (limiting

---

[1]    The Election Code defines "political committee" as "any committee, club, association or other group of persons which receives contributions or makes expenditures," *id*. § 3241(h).  A "Political Action Committee" is "any political committee . . . which receives contributions and makes expenditures to, or on behalf of, any candidate other than a candidate's own authorized political committees or the political committees of any State, county, city, borough, township, ward or other regularly constituted party committee of any political party or political body."  *Id*. § 3241(*l*).

independent expenditures to communications using "express words of advocacy of election or defeat, such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,' 'defeat,' 'reject'").[2]  Violators can face criminal penalties.  *See id.* §§ 3543, 3550.[3]

GMP is a political organization incorporated in Washington, D.C.  Compl. Ex. A ("Levy Decl.") ¶ 3.  It was established solely to influence state legislative elections by making independent expenditures in support of Democratic candidates.  *Id.* ¶ 5.  GMP is prepared to register as a political committee in Pennsylvania; solicit and accept contributions from individuals, corporations, unions, and unincorporated associations; and make independent expenditures to advocate the election or defeat of legislative candidates.  *Id.* ¶ 11.  But GMP has yet to do so, for fear of exposing itself to statutory penalties.  *Id.* ¶ 12.  GMP will not make contributions to Pennsylvania candidates or party committees.  *Id.* ¶ 7.

On September 3, 2013, GMP's counsel sought confirmation from the Bureau of Commissions, Elections and Legislation ("BCEL") that independent

---

[2]    Pursuant to Local Rule 7.8(a), a copies of all unpublished opinions cited in this brief are attached in Exhibit 1.

[3]    In addition to other powers of implementation and administration, Defendant Pennsylvania Secretary of Department of State ("DOS") is expressly charged with investigating reports filed pursuant to the Election Code, *id.* § 3259(6), and authorized to report violations "to the appropriate law enforcement authorities," *id.* § 3259(7).  Defendant Pennsylvania Attorney General has responsibility for enforcing the Election Code.  *Id.* § 3260b.

expenditure-only committees may participate in the 2014 election cycle while raising unrestricted funds without fear of prosecution. *Id.* ¶ 8; Compl., Ex. D at 1-2 ("Opinion Request"). Counsel stated that it has clients who intend to participate in elections in Pennsylvania by soliciting and accepting contributions from individuals, corporations, unions, and unincorporated associations and using those funds to make independent expenditures. Opinion Request 1. It referenced DOS's Statement Regarding the Effect of the U.S. Supreme Court's Decision in *Citizens United v. FEC* on Pennsylvania Law (Mar. 4, 2010) ("*Citizens United* Effect Statement"), which acknowledged that Pennsylvania could no longer constitutionally enforce a ban on corporations, unions, or unincorporated associations making independent expenditures on their own. *See id* at 2.[4] In that Statement, however, DOS advised that, "[t]hat part of . . . the Election Code that prohibits . . . corporations and unincorporated associations (including labor unions) from making 'contributions' . . . 'to a . . . political committee for the purpose of influencing any election'" "remains in full force and effect." *Id.* GMP's counsel asked DOS to "reconsider that position and confirm, by reply letter, that corporations, labor unions, and unincorporated associations may legally

---

[4]     DOS's Statement is available at http://www.co.berks.pa.us/Dept/Elections/Documents/Campaign%20Finance%20Filings/Statement%20on%20Citizen's%20United%20v%20FEC.pdf.

contribute to [independent expenditure-only] committees without limit." Opinion Request 2.

On September 24, 2013, BCEL responded by e-mail reaffirming DOS's position that "a PAC cannot accept corporate contributions, nor may corporations make contributions to a PAC." Compl., Ex. E, at 2 ("BCEL Response"). BCEL provided no analysis in support, other than to state that "[u]nder Pennsylvania law, there is no such thing as an 'independent expenditure only committee' that can accept both corporate and individual contributions," *id*. at 1; that corporations and unions may make independent expenditures on their own; and "[a] corporation may . . . establish a PAC with separate segregated funds . . . [which] could receive contributions from individuals." *Id*. at 1, 2.

The BCEL Response confirms DOS's intention to enforce Section 3253(a)'s prohibition as to all political committees – even those that make only independent expenditures, and do not contribute to candidates or party committees. This forces GMP to choose between foregoing contributions from these types of entities, which would significantly reduce its resources for political speech, or exercising its First Amendment rights and risking criminal penalties. The U.S. Constitution does not allow Defendants to force GMP to make that choice.

### III.  STATEMENT OF QUESTION INVOLVED

This litigation presents a single question for the Court's resolution:

May Defendants constitutionally prohibit a political committee from knowingly accepting or receiving contributions from corporations, unions, and unincorporated associations, where the recipient committee makes only independent expenditures, and does not make contributions to, or coordinated expenditures with, candidates or political party committees, as these terms are defined under Pennsylvania law?

### IV.  ARGUMENT

Applying Section 3253(a)'s ban on contributions made by corporations, unions, and unincorporated associations to independent expenditure-only committees like GMP violates GMP's First and Fourteenth Amendment rights of free speech and association.  The harm to GMP is immediate, irreparable, and requires entry of a preliminary injunction, so that GMP may exercise its constitutionally protected right to engage in independent political speech, without fear of prosecution.

### A.  Legal Standard

GMP's motion is governed by the following four-factor test:

[T]he plaintiffs [have] to demonstrate (1) that they are reasonably likely to prevail eventually in the litigation and (2) that they are likely to suffer irreparable injury without relief.  If these two threshold showings are made the . . . Court then considers, to the extent relevant, (3) whether an injunction would harm the [defendants] more

than denying relief would harm the plaintiffs and (4) whether granting relief would serve the public interest.

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3d Cir. 2013) (internal quotation marks and citation omitted).  Because each of these factors is easily met, GMP's motion should be granted.

**B.    GMP Has a Strong Likelihood of Success on the Merits**

The First Amendment, incorporated to the states by the Fourteenth Amendment, provides that the government "shall make no law . . . abridging the freedom of speech."  U.S. Const. amend I.  Recognizing that "[d]iscussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution," the Supreme Court has repeatedly held that "[t]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for public office." *Citizens United*, 558 U.S. at 339-40 (internal quotation marks and citations omitted).  Accordingly, "[l]aws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'"  *Id*. at 340 (quoting *FEC v. Wis. Right to Life, Inc*. ("*WRTL*"), 551 U.S. 449, 464 (2007) (Roberts, C.J.)); *see also Stilp v. Contino*, 613 F.3d 405, 405 (3d Cir. 2010).

In *Citizens United*, the Supreme Court unequivocally held that the First Amendment prohibits the government from restricting independent expenditures by corporations. 558 U.S. at 365. Building on its prior decision in *Buckley v. Valeo*, 424 U.S. 1, 48 (1976), which recognized that any limitation on independent expenditures "heavily burdens core First Amendment expression," the Court considered the constitutionality of a federal ban on independent expenditures by corporations.[5] The *Buckley* Court had "recognized a 'sufficiently important' governmental interest in 'the prevention of corruption and the appearance of corruption'" to support limits on contributions to candidates. *Citizens United*, 558 U.S. at 345 (quoting *Buckley*, 424 U.S. at 25). The Court explained, however, "that the potential for *quid pro quo* corruption distinguished direct contributions to candidates from independent expenditures." *Id*. "[B]ecause '[t]he absence of prearrangement and coordination . . . alleviates the danger that expenditures will be given as a *quid pro quo* for improper commitments from the candidate,'" the Court found that "'the independent expenditure ceiling . . . fails to serve any substantial government interest in stemming the reality or appearance of corruption in the electoral process.'" *Id*. (quoting *Buckley*, 424 U.S. at 47-48).

---

[5]     While the plaintiff in *Citizens United* was a corporation, its holding applies equally to unions. *See* 558 U.S. at 363-65.

Thus, the Supreme Court has recognized only one government interest sufficiently "legitimate and compelling" to outweigh the First Amendment interests implicated by contributions for political speech: "preventing [*quid pro quo*] corruption or the appearance of corruption." *FEC v. Nat'l Conservative PAC*, 470 U.S. 480, 496-97 (1985); *see also WRTL State PAC v. Barland*, 664 F.3d 139, 153 (7th Cir. 2011). But, as *Citizens United* emphasized, an independent expenditure "[b]y definition . . . is political speech presented to the electorate that is not coordinated with a candidate." 558 U.S. at 360. This "'absence of prearrangement and coordination . . . with the candidate or his agent . . . alleviates the danger that expenditures will be given as *quid pro quo* for improper commitments from the candidate.'" *Id*. at 357 (quoting *Buckley*, 424 U.S. at 47). Moreover, "[t]he First Amendment does not permit [the government] to make . . . categorical distinctions" about speech based on the identity of the speaker. *Id*. at 364. Thus, as a matter of law, "independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption." *Id*. at 357.

It follows inexorably that, just as the state cannot ban corporations from making independent expenditures, it cannot ban them from contributing to groups that only make independent expenditures. Moreover, because independent

expenditure-only committees do not contribute to candidates or party committees, they do not present a sufficient risk of actual or *quid pro quo* corruption to justify fundraising restrictions.  "As the state attempts to regulate entities further and further removed from the candidate, the state interest in preventing corruption necessarily decreases." *N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 293 (4th Cir. 2008).  *See also Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 696 (9th Cir. 2010).  "At the extreme, the entities further removed from the candidate are political committees that make solely independent expenditures." *N.C. Right to Life*, 525 F.3d at 293.  Thus, even before *Citizens United*, the Fourth Circuit held that it was "'implausible' that contributions to independent expenditure political committees are corrupting." *Id*.  "[A]fter *Citizens United* there is *no* valid governmental interest sufficient to justify imposing limits on fundraising by independent-expenditure organizations." *Barland*, 664 F.3d at 154.  *See also N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 487 (2d Cir. 2013) ("[A] donor to an independent expenditure committee . . . is even further removed from political candidates [than the committee] and may not be limited in his ability to contribute to such committees.").

Where states have refused to abide by *Citizens United*, federal courts have swiftly corrected them.  Every single federal appeals court that has considered

source restrictions or limitations on contributions to independent expenditure-only groups since *Citizens United* has struck them down. Two months after *Citizens United*, the D.C. Circuit concluded in an unanimous en banc decision that, because "contributions to groups that make only independent expenditures . . . cannot corrupt or create the appearance of corruption," "the limits on contributions to [such organizations] cannot stand." *SpeechNow.org v. FEC*, 599 F.3d 686, 694, 696 (D.C. Cir. 2010). The Second, Fifth, Seventh, Ninth, and Tenth Circuits have followed suit, all holding that limits on contributions to political organizations that only make independent expenditures violate the First Amendment. *See Republican Party of N.M. v. King*, -- F.3d --, 2013 WL 6645428, at *7 (10th Cir. Dec. 18, 2013); *N.Y. Progress*, 733 F.3d at 487; *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 538 (5th Cir. 2013); *Barland*, 664 F.3d at 143; *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1118 (9th Cir. 2011); *Long Beach Area Chamber of Commerce*, 603 F.3d at 696. The Fourth Circuit reached the same conclusion a few years prior to *Citizens United*. *See N.C. Right to Life*, 525 F.3d at 293.[6] The unanimity of opinion on this issue led the Second Circuit to

---

[6]    Numerous federal district courts have struck down similar laws. *See, e.g.*, *Stay the Course W. Va. v. Tennant*, No. 1:12-CV-01658, 2012 WL 3263623, at *6 (S.D.W.Va. Aug. 9, 2012); *Lair v. Murry*, 871 F. Supp. 2d 1058, 1068 (D. Mont. 2012); *Yamada v. Weaver*, 872 F. Supp. 2d 1023, 1041 (D. Haw. 2012); *Pers. PAC v. McGuffage*, 858 F. Supp. 2d 963, 969 (N.D. Ill. 2012); *Republican Party of N.M. v. King*,

observe that "[f]ew contested legal questions are answered so consistently by so many courts and judges." *N.Y. Progress*, 733 F.3d at 488.

In fact, GMP prevailed in a similar challenge to New Jersey's contribution limits as applied to independent expenditure-only groups last year. *See* Compl., Ex. C (*Funds for Jobs, Growth & Sec. v. N.J. Election Law Enforcement Comm'n*, No. 13-CV-02177-MAS-LHG (D.N.J. July 11, 2013)).[7] That law prohibited political committees from accepting more than $7,200 from each individual, union, or corporation per election. *See* N.J.S.A. 19:44A-11.5(c). Like Pennsylvania, New Jersey made no exception for independent expenditure-only committees in its financing restrictions. There, however, the defendants ultimately recognized that, with court after court striking down similar laws after *Citizens United*, the statute could not survive legal challenge. *See* Levy Decl. ¶ 18. The defendants agreed to preliminary and permanent injunctions that allowed GMP to raise funds for and make significant independent expenditures in New Jersey without fear of criminal prosecution. *Id.*

The Fifth Circuit affirmed the issuance of a similar injunction in *Texans for Free Enterprise*. Like Pennsylvania, Texas prohibited corporations from making –

---

850 F. Supp. 2d 1206, 1215 (D.N.M. 2012); *Mich. Chamber of Commerce v. Land*, 725 F. Supp. 2d 665, 693 (W.D. Mich. 2010).

[7]    GMP was previously known as the Fund for Jobs, Growth and Security, Levy Decl. ¶ 16

and political committees from accepting – contributions in connection with a campaign for elective office. 732 F.3d at 536. And, like Section 3253(a), "[t]he ban on contributions applie[d] regardless of whether the political committee uses that money to make contributions to candidates or makes only direct campaign expenditures [i.e., independent expenditures]." *Id*. The Fifth Circuit easily concluded that "the challenged law is incompatible with the First Amendment."

> We tread a well-worn path. . . . [E]very federal court that has considered the implications of *Citizens United* on independent groups . . . has been in agreement: There is no difference . . . between banning an organization . . . from engaging in advocacy and banning it from seeking funds to engage in that advocacy (or in giving funds to other organizations to allow them to engage in advocacy on its behalf).

*Id*. at 537-38.

In Montana, in *Lair v. Murry*, the court considered whether a state may "prevent corporations from making contributions to political committees that use the contributions for independent expenditures in support of a candidate or political party." 871 F. Supp. 2d at 1062. Here, again, a statute "prevent[ed] corporations from making 'expenditure[s] in connection with a . . . political committee that supports or opposes a candidate or a political party' . . . includ[ing] money that a corporation gives to a political committee that the committee then uses for independent expenditures." *Id*. at 1066 (quoting Mont. Code Ann. § 13-

35-227).  Again, the court found that the ban violated the First Amendment and

permanently enjoined its enforcement.  *Id.* at 1061.  The court explained:

> [S]ince, under *Citizens United*, governments cannot restrict
> independent expenditures made by organizations, governments
> cannot ban corporate contributions to political committees that the
> committees then use for independent expenditures.  Those
> contributions "can only lead to independent expenditures," which
> under *Citizens United*, governments cannot restrict.

*Id.* at 1068 (quoting *Yamada*, 872 F. Supp. 2d at 1041-42).

And in Michigan, in May 2010, after the Secretary of State issued a

declaratory ruling barring independent expenditure-only organizations from

receiving unlimited contributions from corporations, a federal district court

quickly enjoined the Secretary from enforcing this ruling.  *Land*, 725 F. Supp. 2d

at 693.  The Secretary rescinded the ruling.

There is no difference between Section 3253(a) and the statutes in these

cases.  But in each case, a court invalidated the statutes as applied to independent

expenditure-only committees, giving effect to the Supreme Court's holding in

*Citizens United* that the First Amendment does not allow the government to

restrict independent expenditures based on the identity of the speaker.

Nevertheless, the BCEL Response appears to make three arguments that Section

3253(a) may constitutionally be applied to independent expenditure-only

committees.  None have merit.

14

First, BCEL's assertion that Pennsylvania law does not expressly create "an 'independent expenditure only committee' that can accept both corporate and individual contributions," BCEL Resp. 1, is irrelevant. The same was true of federal law prior to *Citizens United*, *see* 558 U.S. at 321; the statute considered in *Texans for Free Enterprise*, *see* Tex. Elec. Code § 251.001(12); the Montana law considered in *Lair*, *see* Mont. Code Ann. § 13-1-101(22); and the Michigan law in *Land*, *see* Letter from Secretary of State Terri Lynn Land to Robert S. LaBrant, Senior Vice President, Michigan Chamber of Commerce (May 21, 2010), *available at* http://www.michigan.gov/documents/sos/Labrant_Final_Response_5-21-2010_322021_7.pdf. A state cannot justify a policy that violates the federal Constitution simply by pointing to its own statute.

Second, BCEL states that corporations and unions may make independent expenditures on their own. *See* BCEL Resp. 1. This, too, however, cannot justify Section 3253(a)'s application to independent expenditure-only committees like GMP. If an entity has a constitutional right to make independent expenditures, the state "does not somehow magically acquire authority to restrict those expenditures merely because the spender joins together with other entities which also have the right to make or fund such expenditures—especially after *Citizens United*." *Land*, 725 F. Supp. 2d at 693. *See also Texans for Free Enter.*, 732 F.3d at 539

(rejecting argument that ban was constitutional because "corporations have plenty of other opportunities for speech" and "may speak themselves").

Finally, BCEL implies that Section 3253(a)'s ban on corporate expenditures is constitutional because "[a] corporation may . . . establish a PAC with separate segregated funds."  BCEL Resp. at 2.  *Citizens United* expressly rejected this exact line of reasoning.  There, the Court explicitly held that a prohibition on corporate independent expenditures was a ban on speech "notwithstanding the fact that a PAC created by a corporation can still speak."  558 U.S. at 337.  As the Court explained, "[a] PAC is a separate association from the corporation," so exempting PACs from the expenditure ban "does not allow corporations to speak."  *Id*.  Moreover, "[e]ven if a PAC could somehow allow a corporation to speak—and it does not—the option to form PACs does not alleviate the First Amendment problems," because "PACs are burdensome alternatives . . . expensive to administer and subject to extensive regulations."  *Id*.  The same is true of Pennsylvania law, which requires every PAC (indeed, every political committee) that receives contributions of $250 or more to file a detailed registration statement with DOS identifying, among other things, its treasurer and chairman, as well as any affiliated or connected organizations; any banks, safety deposits, or other repositories used by the committee; and the proposed period of the committee's

16

operation.  25 Pa. Stat. Ann. § 3244(a)&(b).  Political committees must also file

detailed pre- and post-election reports.  *Id*. § 3246[8].  These are exactly the type of

burdensome regulations that led the *Citizens United* Court to conclude that the

option to form a PAC could never alleviate the First Amendment problems that

follow from a ban on corporate expenditures.  558 U.S. at 337-38.

     In short, there is no justification to support the state's enforcement of

Section 3253(a) against GMP.  The application of this statute is subject to strict

scrutiny.  *Id.* at 340; *Stilp*, 613 F.3d at 409.  Yet, it would fail even under the more

forgiving standard that has been applied to campaign contribution limits.  *See*

*Randall v. Sorrell*, 548 U.S. 230, 247 (2006) (quoting *Buckley*, 424 U.S. at 25).

"No matter which standard of review governs," the government lacks *any*

legitimate interest that could justify limits on contributions to independent

expenditure-only committees like GMP.  *SpeechNow.org*, 599 F.3d at 696.

"'[S]omething . . . outweighs nothing every time.'"  *Id.* at 695 (quoting *Nat'l Ass'n*

*of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 979 (D.C. Cir. 1989)).  *See also*

*N.Y. Progress*, 733 F.3d at 487 n.1 (finding plaintiff likely to succeed on the

---

[8]     Although the law also requires "[e]very person, other than a political
committee or candidate, who makes independent expenditures expressly advocating the
election or defeat of a clearly identified candidate" in excess of $100 to file similar
reports, it expressly exempts those who do so "by contribution to a political committee."
*Id*. § 3246(g).

merits "regardless of the standard of review" because "preventing *quid pro quo*

corruption is the only government interest strong enough to justify restrictions on

political speech, and the threat of *quid pro quo* corruption does not arise when

individuals make contributions to groups that engage in independent spending on

political speech") (internal citation omitted); *Texans for Free Enter.*, 732 F.3d at

538 ("Like the other circuits, we are necessarily agnostic as to [the appropriate

level of scrutiny] . . . . [T]hough no doubt our reasoning would suggest that this

case is—in principle—indistinguishable from *Citizens United*, our judgment

would be the same under either standard . . . .") (footnote omitted); *Barland*, 664

F.3d at 154 ("Without an anticorruption rationale, the government [is] left empty-

handed . . . .").

      The Supreme Court, seven federal courts of appeal, and a myriad of lower

courts have all agreed that the First Amendment prohibits the government from

restricting the use of corporate funds to make independent expenditures.  With

such overwhelming authority, there can be no doubt that GMP is likely to succeed

on the merits.  This factor weighs strongly in favor of issuing a preliminary

injunction.

### C.    GMP Will Suffer Irreparable Harm Without An Injunction

GMP will suffer irreparable harm if its motion is not granted.  GMP is ready, willing, and able to register as a political committee, raise funds outside the Section 3253(a) restrictions, and make independent expenditures in Pennsylvania. Levy Decl. ¶ 11.  The First and Fourteenth Amendments guarantee its right to do so.  But, under Pennsylvania law as now written, interpreted and enforced, GMP must either follow the Section 3253(a) limits that apply to all PACs thereby acquiescing to unconstitutional limits on its speech and associational rights, or risk criminal penalties.  *See* 25 Pa. Stat. Ann. §§ 3253(a), 3543, 3550.

"'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'"  *K.A. ex rel. Ayers*, 710 F.3d at 113 (quoting *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976)).  GMP is suffering irreparable injury even now.  "Every sum that a donor is forbidden to contribute to [a political committee] because of this statute reduces constitutionally protected political speech."  *N.Y. Progress*, 733 F.3d at 488.  *See also Texans for Free Enter.*, 732 F.3d at 539 (finding irreparable injury in case involving ban on corporate contributions to independent expenditure-only committees and explaining that a committee's "ability to speak is undoubtedly limited when it cannot raise money to pay for speech").  Furthermore, "[t]he harm is particularly

irreparable where, as here, plaintiff seeks to engage in political speech, as timing is of the essence in politics and a delay of even a day or two may be intolerable.'" *Thalheimer*, 645 F.3d at 1128 (quoting *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009)).  The candidate filing deadlines are only a few short months away.  Soon after, GMP intends to make independent expenditures that expressly advocate the election and defeat of specific candidates in Pennsylvania. Levy Decl. ¶ 15.  The level and effectiveness of GMP's future speech is directly related to the amounts it can raise now: the longer it must wait, the fewer funds it will raise, which ultimately means fewer independent expenditures and less speech.  *Id*. ¶ 14.  With each day that passes, GMP loses valuable opportunities for fundraising to facilitate its constitutionally protected political speech.  *Id*. ¶¶ 14, 16.

If GMP were to disregard Section 3253(a)'s prohibitions without the protection of a court order, the BCEL Response confirms that GMP will risk imminent injury in the form of potential criminal prosecution, imposition of fines and time-consuming and burdensome litigation in defense of its constitutional rights, diverting valuable resources that would otherwise be used to fund its political speech during the 2014 election cycle.  This Hobson's choice constitutes

irreparable harm that cannot be compensated with post-election relief or after-the-fact money damages.  *See, e.g.*, *Thalheimer*, 645 F.3d at 1128.

The current, chilling effect of Section 3253(a) and the BCEL Response on GMP's rights to free speech and association is itself an actual, immediate and irreparable constitutional injury.  *See, e.g.*, *Stilp*, 613 F.3d at 409 n.4 (relying on Supreme Court's holding in *Elrod*, which "found injunctive relief was 'clearly appropriate' where 'First Amendment interests were either threatened or in fact being impaired at the time relief was sought'") (quoting *Elrod*, 427 U.S. at 373); *Miller v. Mitchell*, 598 F.3d 139, 147 n.8 (3d Cir. 2010) (finding where plaintiff has shown a likelihood of success on the merits of a First Amendment claim "they have necessarily shown that irreparable harm would result absent an injunction"). Accordingly, this factor also weighs strongly in favor of granting GMP's motion.

**D.    Defendants Will Not Suffer Harm If Injunctive Relief Is Granted**

Defendants cannot claim that granting GMP's requested preliminary injunction would result in greater harm to Defendants "because the State 'does not have an interest in the enforcement of an unconstitutional law.'"  *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 388-89 (3d Cir. 2012) (quoting *ACLU v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003), *aff'd*, 542 U.S. 656 (2004),

*cert. denied*, 133 S. Ct. 523 (2012)).  Accordingly, the balance of harms tips decidedly in favor of GMP.

**E.     The Public Interest Favors Injunctive Relief**

Finally, "[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff." *Am. Tel & Tel. Co. v. Winback & Conserve Program, Inc*., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994).  This case is no exception.  Indeed, the public interest factor weighs heavily in favor of entering an injunction, because "the enforcement of an unconstitutional law vindicates no public interest." *K.A. ex rel. Ayers*, 710 F.3d at 114 (citing *ACLU*, 322 F.3d at 251 n.11); *see also Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009) ("[B]ecause the public as a whole has a significant interest in ensuring . . . protection of First Amendment liberties . . . the public interest would be advanced by issuance of a preliminary injunction enjoining enforcement of those portions of challenged statutes that are of questionable constitutionality.") (internal quotation marks and citation omitted); *Homans v. City of Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) ("[T]he public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression.").

# V.    **CONCLUSION**

Rarely is there a case where preliminary injunctive relief would be more appropriate.  Given the overwhelming federal precedent supporting GMP's claims, the irreparable harm that GMP would suffer without an injunction, the lack of harm to Defendants as they stand down from enforcing an unconstitutional law, and the strong public interest in following Supreme Court precedent and protecting First Amendment rights, GMP requests that the Court immediately enjoin Defendants from implementing, enforcing, or giving any effect to Section 3253(a)'s contribution prohibitions as applied to political committees, like GMP, that make only independent expenditures and do not make contributions to or coordinated expenditures with candidates or party committees.

Dated:       February 24, 2014             Respectfully submitted,

By___/s/ Mark A. Aronchick_____
HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
Mark Aronchick
(PA. ID No. 20261)
maronchick@hangley.com
Matthew A. Hamermesh
(PA. ID No. 82313)
mhamermesh@hangley.com
One Logan Square
27th Floor
Philadelphia, PA 19103
Telephone: (215) 568-6200
Facsimile:  (215) 568-0300

and

PERKINS COIE LLP
Marc E. Elias (*Pro Hac Vice* Special
Admission Petition Pending)
D.C. Bar No. 442007
melias@perkinscoie.com
Elisabeth C. Frost (*Pro Hac Vice*
Special Admission Petition Pending)
D.C. Bar No. 1007632
efrost@perkinscoie.com
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| GENERAL MAJORITY PAC, a Washington, D.C., not for profit corporation, | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| CAROL AICHELE, in her official capacity as Pennsylvania Secretary of State; KATHLEEN KANE, in her official capacity as Pennsylvania Attorney General; JONATHAN M. MARKS, in his official capacity as Commissioner of Pennsylvania's Bureau of Commissions, Elections and Legislation; IAN HARLOW, in his official capacity as Deputy Commissioner of Pennsylvania's Bureau of Commissions, Elections and Legislation; and TRISHA MALEHORN, in her official capacity as Chief of the Division of Campaign Finance and Lobbying Disclosure of Pennsylvania's Bureau of Commissions, Elections and Legislation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. _____ |
| *Defendants*. | ) |

## LOCAL RULE 7.8(b)(2) CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT

The undersigned counsel for Plaintiff, the General Majority PAC, hereby

certify that the foregoing Brief In Support of Motion for Preliminary Injunction

does not exceed 5,000 words.  In reliance on the word-count feature of Microsoft

Word, the word processing program with which it was produced, the Brief is 4,987

words.

Dated:        February 24, 2014        By    /s/ Mark A. Aronchick
                                       HANGLEY ARONCHICK SEGAL
                                       PUDLIN & SCHILLER
                                       Mark Aronchick
                                       (PA. ID No. 20261)
                                       maronchick@hangley.com
                                       Matthew A. Hamermesh
                                       (PA. ID No. 82313)
                                       mhamermesh@hangley.com
                                       One Logan Square
                                       27th Floor
                                       Philadelphia, PA 19103
                                       Telephone: (215) 568-6200
                                       Facsimile:  (215) 568-0300

                                              and

                                       PERKINS COIE LLP
                                       Marc E. Elias (*Pro Hac Vice* Special
                                       Admission Petition Pending)
                                       D.C. Bar No. 442007
                                       melias@perkinscoie.com
                                       Elisabeth C. Frost (*Pro Hac Vice*
                                       Special Admission Petition Pending)
                                       D.C. Bar No. 1007632
                                       efrost@perkinscoie.com
                                       700 Thirteenth St., N.W., Suite 600
                                       Washington, D.C. 20005-3960
                                       Telephone: (202) 654-6200
                                       Facsimile: (202) 654-6211

                                       *Counsel for Plaintiff*