IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GENERAL MAJORITY PAC,       :
      Plaintiff             :
                         :
     v.                 :  CIVIL NO. 1:14-CV-332
                         :
CAROL AICHELE, in her official    :
capacity as Pennsylvania Secretary of  :
State; KATHLEEN KANE, in her official  :
capacity as Pennsylvania Attorney    :
General; JONATHAN M. MARKS, in his  :
official capacity as Commissioner of   :
Pennsylvania's Bureau of Commissions, :
Elections and Legislation; IAN        :
HARLOW, in his official capacity as   :
Deputy Commissioner of          :
Pennsylvania's Bureau of Commissions, :
Elections and Legislation; and TRISHA  :
MALEHORN, in her official capacity as  :
Chief of the Division of Campaign    :
Finance and Lobbying Disclosure of   :
Pennsylvania's Bureau of Commissions, :
Elections and Legislation;         :
      Defendants          :

*MEMORANDUM*

*I.*        *Introduction*

      This case calls into question the constitutionality of a provision of

Pennsylvania's Election Code that limits the fundraising activities of political

committees operating within the state following the United States Supreme Court's

decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010). The

Commonwealth of Pennsylvania concedes that the challenged provision no longer

passes constitutional muster, and the only matter remaining to be decided is the

scope of this court's order permanently enjoining its enforcement.

For the reasons that follow, we will enter a narrowly tailored order striking down the offending provision and permanently enjoining the Commonwealth from enforcing it. We will, however, decline the Commonwealth's invitation to go further by entering an order that substantially rewrites the Election Code and any applicable rules and regulations. That task is properly left to the Pennsylvania General Assembly and Bureau of Commissions, Elections and Legislation.

II.        Background

       A.        *Campaign Finance Regulations and* Citizens United

As the Supreme Court recently affirmed, there is no right in our democracy more basic than the right to participate in electing our political leaders. *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1440-41 (2014). Participation comes in many different forms–citizens can run for office, vote, urge others to vote for a particular candidate or candidates, or volunteer to work for a campaign. *Id.* at 1441. Most pertinent to today's analysis, though, is another form of participation: political giving and spending.

By making a direct monetary donation to a political campaign (giving), or by expending resources in an effort to promote particular candidates or policies (spending), individuals can influence our political landscape. The Supreme Court has concluded that by making such "contributions" or "expenditures," as they are formally known, individuals exercise their protected First Amendment rights to free expression and association. *See id.* at 1448.

In essence, an individual's political giving and spending amounts to a symbolic expression of support for a candidate or issue and serves to affiliate the individual with a candidate or cause. The influx of money also increases the overall

quantity of political expression by providing a means through which ideas can be disseminated to the public at large–for example, by funding the political advertisements that populate the airwaves. Thus, when an individual puts his money where his proverbial mouth is through political giving and spending, that conduct falls within the realm of protected First Amendment activities.

Over the past four decades since the landmark campaign finance decision *Buckley v. Valeo*, 424 U.S.1 (1976), the Supreme Court has repeatedly examined the constitutional implications of political giving and spending and legislative efforts to limit those activities. During that time, the Court has considered and rejected various justifications for limiting both direct political contributions and independent expenditures–*i.e.*, political spending that is not approved by or coordinated with a candidate.

Ultimately, in 2010's *Citizens United*, the Court concluded that the only legitimate governmental interest in limiting political spending–and thereby restricting protected First Amendment activities–is avoiding corruption or the appearance of corruption. *See id.,* 558 U.S. at 365. From this premise, the Court found that a federal law that banned corporations from making independent expenditures violated the First Amendment. The Court reasoned that "independent expenditures, including those made by corporations, do not give rise to corruption or the appearance of corruption" because spending without "prearrangement and coordination" with a candidate "alleviates the danger that expenditures will be given as a *quid pro quo* for improper

commitments from the candidate." *Id.* at 357 (internal citation and quotation marks omitted).[1]

In the wake of this decision, suits were filed across the country challenging the constitutionality of various federal, state, and local election provisions that limited the amount of money individuals or organizations could contribute to groups that make only independent expenditures. The United States Court of Appeals for the District of Columbia Circuit became the first federal appellate court to address the issue, striking down as unconstitutional a federal law capping such contributions. *See SpeechNow.org v. Fed. Election Comm'n*, 599 F.3d 686 (D.C. Cir. 2010). The D.C. Circuit reasoned that "because *Citizens United* holds that independent expenditures do not corrupt or give the appearance of corruption as a matter of law, then the government can have no anti-corruption interest in limiting contributions to independent expenditure-only organizations." *Id.* at 696.

Every federal appellate court to address the issue since has reached the same conclusion, striking down various contribution limits to independent expenditure groups. *See, e.g.*, *Republican Party v. King*, 741 F.3d 1089, 1095-96 (10th Cir. 2013) (holding that "political committees that are not formally affiliated with a political party or candidate may receive unlimited contributions for independent expenditures"); *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 487 (2d Cir. 2013) (holding that an

---

[1] Despite popular misconceptions, *Citizens United* did not announce that "corporations are people." The Court had previously recognized that First Amendment protections extend to corporations and other associations of individuals, and not just "natural persons." *Id.* at 342-43 (collecting cases). Similarly, *Citizens United* did not declare that "money is speech"; rather, it was the latest in a line of decisions recognizing that political giving and spending are protected First Amendment activities.

aggregate limit on an individual's contributions is unconstitutional as applied to contributions to independent expenditure-only groups); *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 538 (5th Cir. 2013) (holding that a state law ban on corporate contributions cannot be applied to independent expenditure committees); *Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 143 (7th Cir. 2011) (holding that a state law restricting contributions to $10,000 cannot be applied to independent expenditure committees); *Long Beach Area Chamber of Commerce v. City of Long Beach*, 603 F.3d 684, 698-99 (9th Cir. 2010) (holding that a local ordinance restricting contributions cannot be applied to a political action committee seeking to use funds for independent expenditures); *see also N.C. Right to Life, Inc. v. Leake*, 525 F.3d 274, 293 (4th Cir. 2008) (holding–even before the issuance of *Citizens United*–that a state law limiting contributions to $4,000 could not be constitutionally applied to independent expenditure committees).

This case presents an identical challenge to Pennsylvania's Election Code, which, as discussed below, prevents independent expenditure-only political committees from accepting contributions from corporations and unincorporated associations.

> B.     *Pennsylvania's Election Code*

Pennsylvania's Election Code prohibits entities such as banks, corporations, and unincorporated associations from making political contributions or expenditures. *Nutter v. Dougherty*, 921 A.2d 44, 51 (Pa. Commw. Ct. 2007) (citing 25 P.S. § 3253); *Ctr. for Individual Freedom v. Corbett*, No. 07-2792, 2008 U.S. Dist. LEXIS 45236, *1 (E.D. Pa. May 5, 2008) (stating that "Pennsylvania campaign finance

law prohibits corporations and unions from making any 'expenditure in connection with the election of any candidate or for any political purpose whatever'") (quoting § 3253(a)). Candidates and political committees are similarly prohibited from knowingly accepting or receiving contributions from corporations and unincorporated associations. *In re Petition to Audit Campaign Fin. Reports of Cartwright*, 900 A.2d 448, 454-55 (Pa. Commw. Ct. 2006) (stating that § 3253(a) "makes it unlawful for any candidate to knowingly accept or receive any contribution from any corporation"). Violators can face harsh criminal penalties, including imprisonment and fines. *See* §§ 3543, 3550.

The Election Code makes no exception from this general prohibition for contributions by corporations and associations to groups that make only independent expenditures.[2] Thus, as the law currently stands, corporations and unincorporated associations (including labor unions) are prevented from contributing to independent expenditure-only groups, and those groups are prohibited from accepting such contributions.

---

[2] The Election Code does recognize "independent expenditures" as a particular subset of potential "expenditures," but it does not except independent expenditure-only groups from the general contribution prohibition discussed above. *Compare* § 3241(d)(1) (generally defining an "expenditure" as money spent "for the purpose of influencing the outcome of an election"), *with* § 3241(e) (defining an "independent expenditure" as "*an expenditure* by a person made for the purpose of influencing an election *without cooperation or consultation with any candidate or any political committee authorized by that candidate* and which is not made in concert with or at the request or suggestion of any candidate or political committee or agent thereof") (emphasis added).

C.      *Procedural History of this Lawsuit*[3]

The plaintiff in this lawsuit, General Majority PAC ("GMP"), is a political organization based in Washington, D.C. It was established for the sole purpose of influencing legislative elections in various states by making independent expenditures in support of Democratic candidates. Prior to initiating this lawsuit, GMP refrained from soliciting or accepting donations from individuals, corporations, labor unions, and other unincorporated associations in Pennsylvania, and from making independent expenditures advocating the election of Democratic legislative candidates in the state.

On September 3, 2013, GMP contacted Pennsylvania's Bureau of Commissions, Elections and Legislation ("BCEL") to confirm that in light of *Citizens United* and subsequent court decisions, the Commonwealth would no longer seek to enforce the provision of its Election Code that prohibits political committees that make only independent expenditures from accepting or receiving any contributions from corporations or unincorporated associations. The BCEL responded, stating that the contribution prohibition remained in full force and effect.

Unable to achieve relief through administrative channels, GMP initiated this federal lawsuit on February 24, 2014, to challenge the constitutionality of the Election Code's contribution prohibition. GMP's complaint names Carol Aichele, Secretary of the Commonwealth, Pennsylvania Attorney General Kathleen Kane, and other state officials as defendants (collectively, "the Commonwealth"). GMP seeks an order from this court declaring that the Election Code's contribution prohibition is

---

[3] The parties do not dispute the facts underlying this case, and our recitation of these facts stems from the parties' own briefing (Docs. 19, 21).

unconstitutional as applied to political committees that make only independent expenditures. GMP also requests that we permanently enjoin the Commonwealth from enforcing the contribution prohibition with respect to independent expenditure-only groups, and enjoin any related rules and regulations.

Along with its complaint, GMP also filed a motion requesting that we enter a preliminary injunction preventing the Commonwealth from enforcing the contribution prohibition to independent expenditure-only groups pending the ultimate resolution of this lawsuit. We conducted a conference with the parties on February 27, 2014, at which point the Commonwealth indicated that it would neither oppose the entry of the preliminary injunction nor contest the merits of this case. In light of the Commonwealth's concession that its Election Code is no longer constitutionally sound, we entered an order (Doc. 15) granting GMP's motion for preliminary injunction. The parties further agreed to negotiate the terms of a consent judgment to resolve this case entirely.

After the parties were unable to reach an agreement, GMP filed the instant motion for judgment on the pleadings (Doc. 18) on July 2, 2014. Noting that there are no factual disputes and that the parties agree that the challenged Election Code provision cannot stand constitutional scrutiny, GMP requests that we convert the preliminary injunction previously entered into a permanent injunction. The Commonwealth agrees that a permanent injunction is warranted, but requests that our final order go further than our first. Specifically, the Commonwealth requests that we "expressly note th[e] continuing obligation" to comply with provisions of the Election Code that were not the subject of this litigation. (Doc. 21 at 4). Additionally, the

Commonwealth would have us effectively rewrite the Election Code and its implementing regulations by establishing a new category of "independent political committees"; setting forth the requirements for becoming one of these committees; and directing the Pennsylvania Department of State to promulgate forms for the certification of these committees. (Doc. 21-1 at 2-3). GMP opposes this request. The matter has been fully briefed (Docs. 19, 21, 23), and it is ripe for disposition.

III.        Discussion

Pennsylvania's Election Code prohibits corporations and unincorporated associations from contributing to independent expenditure-only groups, and these groups are similarly prohibited from accepting such contributions. 25 P.S. § 3253(a). In the wake of *Citizens United*, however, this prohibition on political spending that is neither prearranged nor coordinated with a candidate amounts to an impermissible restriction of protected First Amendment activity. Thus, we must strike down as unconstitutional the contribution prohibition as applied to groups that make only independent expenditures. *See Marbury v. Madison*, 5 U.S. 137, 180 (1803) (stating that "a law repugnant to the Constitution is void").

In reaching this conclusion, we join a host of federal courts, including the Courts of Appeals for the Second, Fifth, Seventh, Ninth, Tenth, and D.C. Circuits, to find statutory limitations on independent expenditures unconstitutional following *Citizens United*. *See, e.g.*, *N.Y. Progress & Prot. PAC*, 733 F.3d at 487; *Texans for Free Enter.*, 732 F.3d at 538; *Wis. Right to Life State PAC*, 664 F.3d at 143; *Long Beach Area Chamber of Commerce*, 603 F.3d at 698-99; *Republican Party*, 741 F.3d at 1095-96; *SpeechNow.org*, 599 F.3d at 696.  Even the Commonwealth concedes

that our conclusion is compelled by *Citizens United*–the contribution prohibition

contained in the Election Code can no longer be applied to independent expenditure-

only groups. (Doc. 21 at 2) (stating that the Commonwealth has "consistently

indicated, through [its] counsel, that based on the Supreme Court's decision in

*Citizens United* . . ., [it] could not defend–on the merits–the claims raised by GMP in

the Complaint").

           The only issue in this case the parties disagree on is the proper scope of

our order permanently enjoining the enforcement of the unconstitutional contribution

prohibition. GMP contends that our order should be narrowly tailored and limited to the

issues raised in this case: it should simply declare the Election Code's contribution

prohibition unconstitutional as applied to independent expenditure-only committees

and permanently enjoin the Commonwealth from enforcing the prohibition.

           The Commonwealth agrees that this relief is appropriate, but curiously

requests that our order striking down part of its own Election Code go further still.

Specifically, the Commonwealth requests that our order include affirmative statements

about Election Code provisions not at issue in this case. Essentially, the

Commonwealth seeks a written reminder that Election Code provisions that have not

been considered or invalidated by this court–like the provisions addressing issues

such as registration of political committees and contribution reporting

requirements–remain in effect. Second, the Commonwealth asks that we rewrite the

Election Code in part by crafting a new category of Pennsylvania law for "independent

political committees." The Commonwealth would have us define the requirements of

this new political group and compel the Pennsylvania Department of State to establish

and maintain the necessary forms for independent political committees to certify their compliance with the Election Code. (Doc. 21-1 at 2-3).

We conclude that GMP's proposal charts the appropriate course. Our permanent injunction should be narrowly tailored to address the constitutional harm in this case. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248 (3d Cir. 2005) (stating that "federal courts should ensure 'the framing of relief no broader than required by the precise facts'") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000)). Accordingly, we find that neither of the Commonwealth's proposed additions to the terms of the permanent injunction order is warranted.

With respect to the Commonwealth's first proposal, there is no need for our order to discuss issues that were not raised in this litigation. Much as a written reminder that murder remains illegal in the Commonwealth is unnecessary to resolve this case, so too is the reminder that individuals and organizations must comply with the various provisions of the Election Code that were not addressed here.

As for the Commonwealth's second request for us to establish a new category of "independent political committees," we will not usurp the role of the democratically elected General Assembly or the BCEL by substantively rewriting the Election Code. That task goes beyond the limited role of the federal courts in our system of government. Having excised the offending independent expenditure

limitation from the Election Code, we leave it to the Commonwealth to amend its laws in accordance with the constitutional principles addressed today.[4]

IV.          *Conclusion*

In *Citizens United*, the Supreme Court made it clear that the First Amendment forbids governments from limiting political spending in the form of independent expenditures. Section 3253(a) of Pennsylvania's Election Code, however, does just that by prohibiting corporations and unincorporated associations from contributing to political groups that make only independent expenditures. As a result, we are compelled to find this prohibition unconstitutional and enter the attached order permanently enjoining the Commonwealth from enforcing it.


                                                    /s/ William W. Caldwell
                                                   William W. Caldwell
            August 13, 2014                        United States District Judge

---

[4] In fact, this process has already begun. Since the issuance of the preliminary injunction, the Commonwealth has already provided guidance and promulgated regulations permitting independent expenditure-only groups to accept contributions from corporations and unincorporated associations. (Docs. 23-1, 23-2).